**Nos. 25-1018, 25-1019, 25-1024**

# In the United States Court of Appeals for the Fourth Circuit

―――――

JEFFERSON GRIFFIN,

*Petitioner-Appellee,*

*v.*

NORTH CAROLINA STATE BOARD OF ELECTIONS,

*Respondent-Appellant,*

*and*

ALLISON RIGGS, ET AL.,

*Intervenors-Respondents.*

―――――

On Appeal from the United States District Court
for the Eastern District of North Carolina

―――――

**OPPOSITION TO ADMINISTRATIVE STAY**

―――――

Mark M. Rothrock
LEHOTSKY KELLER COHN LLP
8513 Caldbeck Drive
Raleigh, NC 27615
(336) 416-3326
mark@lkcfirm.com

Kyle D. Hawkins
  *Counsel of Record*
William T. Thompson
LEHOTSKY KELLER COHN LLP
408 W. 11st Street, 5th Floor
Austin, TX 78701
(512) 693-8350
kyle@lkcfirm.com

*Counsel for Petitioner-Appellee*

# TABLE OF CONTENTS

PAGE

Introduction.................................................................................................1

Background ................................................................................................3

Standard of Review ...................................................................................6

Argument....................................................................................................7

I.   An Administrative Stay Is Procedurally Improper. ...........................7

A.   This case has already been remanded, so a stay would not accomplish anything.................................................................8

B.   The Board does not identify the supposed harm an *administrative* stay would prevent before this Court can consider a full stay. .........................................................10

C.   The Board failed to seek relief in district court and does not show that moving first in the district court would have been impracticable.................................................12

II.   The Traditional *Nken* Factors Counsel Against a Stay. ...................13

A.   The Board is unlikely to succeed on the merits of its appeal..........................................................................13

1.   The district court properly abstained from resolving Judge Griffin's complex questions of state law. ..................13

2.   There is at least one alternative basis to affirm the decision below. .........................................................18

B.   The Board faces no prospect of irreparable harm absent an administrative stay. ..................................................19

C.   The remaining *Nken* factors counsel against a stay....................20

Conclusion................................................................................................21

Certificate of Service ...............................................................................22

Certificates of Compliance .......................................................................22

# INTRODUCTION

Respondent-Appellant North Carolina State Board of Elections asks this Court to administratively stay an event that has already happened. Two days ago, on January 6, the district court remanded these federal actions to the North Carolina state courts, where Petitioner-Appellee Judge Jefferson Griffin originally brought them. The district court below consummated and effectuated that remand through the issuance of a formal order and accompanying letter. *See* Mot. App'x at 31. At that very moment, the federal district court lost—and the North Carolina courts reacquired—jurisdiction. 28 U.S.C. § 1447(c); *see Bryan v. BellSouth Communications, Inc.*, 492 F.3d 231, 241 (4th Cir. 2007) ("the state court regained jurisdiction when the district court remanded . . . to state court"). Recognizing the need for "expeditious[]" resolution, the North Carolina Supreme Court asserted its newly acquired jurisdiction to issue an order staying the Board's certification of the 2024 election for Seat 6 on the North Carolina Supreme Court, and it set an expedited briefing schedule that would complete briefing by January 24, 2025. *See* Mot. App'x at 92.

As these developments demonstrate, this Court can no more stay the remand order below than it can stay publication of yesterday's *New York Times*. The Board's lead case confirms as much. The Board relies on *Forty Six Hundred LLC v. Cadence Education, LLC*, 15 F.4th 70, 79 (1st Cir. 2021), to support the need to "preserve the Board's right to appeal," Mot. at 4. But that very

case recognizes that once a remand has already occurred, there is no basis for an "emergency motion in [the appellate] court to stay the remand order pending appeal . . . because there [i]s nothing left for [the appellate] court to stay." 15 F.4th 73 n.2. The Board fails to disclose that portion of the First Circuit's decision, even though it confirms that an administrative stay is not available. And the Board does not cite a single case—and Judge Griffin knows of none—in which a federal appellate court issued a stay of a remand that had already been effectuated.

Simply put, an administrative stay cannot stop an event that has already occurred, and it certainly cannot order a district court to ask the Supreme Court of North Carolina to return a case that has already been remanded and subjected to new orders from the state court. Instead, administrative stays exist to stop a lower-court decision from "go[ing] into effect." *United States v. Texas*, 144 S. Ct. 797, 798 (2024) (Barrett, J., concurring in denial of applications to vacate stay). Here, the relevant decision has *already* "go[ne] into effect." *Id*. Indeed, it *went* into effect the moment the district court issued its judgment and official notifications. *Bryan*, 492 F.3d at 241. And two different North Carolina courts have accordingly issued new orders in exercise of their jurisdiction.

An administrative stay is thus off the table. But the Board's request fails for other reasons, too. Each *Nken* factor weighs against any sort of stay, administrative or otherwise. First, the Board is unlikely to prevail on appeal because the district court correctly abstained from deciding complicated

questions of state law. And there is at least one independent basis on which to affirm the decision below, as the district court lacked removal jurisdiction. Second, the Board faces no harm absent a stay; a stay that somehow purports to block an event that already occurred will have no impact on anything or anyone. In any event, the Board's theory of harm fails on its own terms, as the Board has not identified any irreparable harm that will occur before this Court can rule on the stay motion. Finally, the public interest and equities all counsel against the imposition of a stay that will impact nothing, and they all counsel in favor of the correct application of North Carolina law.

The application for an administrative stay should be denied.

## Background

This case is about the Board's unlawful effort to certify election results based on votes cast in violation of state law in connection with Seat 6 on the North Carolina Supreme Court.

In the 2024 general election, Judge Griffin faced Justice Allison Riggs in a close race. D.E. 1-4 at 16, 18.[1] As the county boards of elections canvassed the vote, Judge Griffin identified ballots that violated North Carolina's con-stitutional and statutory requirements. *Id.* at 18-21. He therefore filed elec-tion protests with the county boards across the state, seeking to prohibit the

---

[1] Citations to "D.E." throughout this brief refer to docket entries found on the district court docket for this case, *Griffin v. North Carolina State Board of Elections*, No. 5:24-cv-00724-M-RN (E.D.N.C.).

3

counting of ballots cast in violation of state law. *Id.* Judge Griffin's protests alleged only state-law violations—they raised no federal laws as bases for relief. Judge Griffin properly sent notice of his protests to affected voters. D.E. 1-5 at 174-78.

Thereafter, the Board assumed jurisdiction over three categories of protests that "presented legal questions of statewide significance." *Id.* at 44. In the first, Judge Griffin argued that individuals who failed to provide their driver's license or social security number, as required by N.C. Gen. Stat. § 163-82.4(a)(11), were not legally registered to vote, as required by N.C. Const. art. VI, 3(1) and N.C. Gen. Stat. 163-82.1(a). *See* D.E. 1-5 at 10-14. In the second, Judge Griffin argued that Article VI, § 2(1) of the state constitution prohibited individuals who had never lived in North Carolina from voting in state elections and that, to the extent a state statutory provision, N.C. Gen. Stat. § 163-258.2(1)(e), purported to allow such individuals to vote, it violated the state constitution. *See* D.E. 1-5 at 15-26. And in the third, Judge Griffin contended that the photo-identification requirements in Article 20 of Chapter 163 of the General Statutes, N.C. Gen. Stat. § 163-230.1(a)(4), (b)(4), (e)(3), (f1), applied to overseas absentee ballots cast pursuant to Article 21A of that chapter, and that state law therefore prohibited counting any absentee ballots unaccompanied by copies of the voter's photo identification. *See* D.E. 1-5 at 26-30. For relief, Judge Griffin requested that the Board correct the vote count for his election. *See* D.E. 1-4 at 82. He did not request that the Board remove any voter from the state's voter rolls. *See id.* at 42.

4

The Board ultimately denied Judge Griffin's protests. In its written decision, it disagreed with Judge Griffin's interpretation of state election law. D.E. 1-5 at 41-80. In the alternative, the Board declared that sustaining the protests would have violated several federal laws, including the National Voting Rights Act ("NVRA"), the Help America Vote Act ("HAVA"), and the Fourteenth Amendment. *Id.*

Following the Board's decision, Judge Griffin petitioned the North Carolina Supreme Court for a writ of prohibition, asking that court to stay the Board from issuing of a certificate of election and to conclude that the Board had incorrectly applied the law when it denied his protests. *See* D.E. 1-4. Judge Griffin's petition—like his election protests—argued that state law prohibited the Board from counting the contested ballots, and that the Board had acted outside its authority when it denied his protests. *Id.* Judge Griffin's petition also rebutted the federal-law defenses that the Board had raised. *Id.*

Before the North Carolina Supreme Court could consider Judge Griffin's petition for a writ of prohibition, the Board removed it to federal court. *See* D.E. 1. In its notice of removal, the Board argued that removal was appropriate under 28 U.S.C. sections 1441(a) and 1443(2). After the Board removed the petition for a writ of prohibition, Judge Griffin filed petitions for judicial review in state superior court, pursuant to N.C. Gen. Stat. § 163-182.14(b). The Board also removed Judge Griffin's petitions for judicial review. *See Griffin v. N. Carolina State Bd. of Elecs.*, No. 5:24-cv-00731 (E.D.N.C.), D.E. 1.

5

In the district court, Judge Griffin moved for a preliminary injunction to prohibit the Board from issuing a certificate of election and thereby mooting his claims. *See* D.E. 31, 32. Judge Griffin argued that abstention warranted remand of this case to the North Carolina Supreme Court, *see* D.E. 32 at 9-10, and the district court ordered the Board to explain "why this matter should not be remanded." Text Order dated December 26, 2024. In its response to that order, however, the Board failed to make any argument against abstention. *See generally* D.E. 39. Judge Griffin later filed a reply noting the Board's failure to respond, *see* D.E. 47 at 2, and a separate motion to remand that again raised abstention, *see* D.E. 48-49.

On January 6, 2025, the district court found abstention warranted and entered an order remanding this case to the North Carolina Supreme Court. *See* D.E. 50. That same day, it mailed a copy of that order to the North Carolina Supreme Court. *See* D.E. 51. The Board then filed a notice of appeal. D.E. 52.

Upon remand, the North Carolina Supreme Court entered a temporary stay, prohibiting the Board from issuing a certificate of election. Mot. App'x at 91-92. The Board has now moved this Court for an immediate administrative stay and a stay pending appeal. Mot. at 1.

## STANDARD OF REVIEW

The Board's motion tellingly omits the applicable standard. The extraordinary remedy of a stay pending appeal "is not a matter of right, even if

irreparable injury might otherwise result." *Nken v. Holder*, 556 U.S. 418, 433 (2009) (internal quotation marks omitted). As "[t]he party requesting a stay," the Board "bears the burden of showing that the circumstances justify" a stay based on four factors: "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." *Id.* at 433-34 (internal quotation marks omitted).

Because the Board challenges a decision committed to the district court's sound discretion, it cannot prevail absent "a strong showing," *Nken*, 556 U.S. at 434, that the district court abused that discretion. "This Court reviews a district court's decision to abstain for abuse of discretion." *Hennis v. Hemlick*, 666 F.3d 270, 274 (4th Cir. 2012). This standard of review is highly deferential, *see Air Evac EMS, Inc. v. McVey*, 37 F.4th 89, 101 (4th Cir. 2022), and a district court's exercise of discretion is permissible "even if an appellate court suspects that it might have ruled otherwise in the first instance," *First Penn-Pacific Life Ins. Co. v. Evans*, 304 F.3d 345, 348 (4th Cir. 2002).

## ARGUMENT

## I. An Administrative Stay Is Procedurally Improper.

The Board's motion for an administrative stay fails before it begins because an administrative stay is unavailable in this context. First, the remand

has already occurred, and thus, "there [i]s nothing left for this court to stay." *Cadence Educ.*, 15 F.4th at 73 n.2. A stay thus "would be pointless" and "a futile gesture." *Int'l Found. for Genetic Research (Michael Fund) v. Shalala*, 57 F.3d 1066 (4th Cir. 1995) (unpublished table opinion). Second, the Board neither identifies a status quo that the stay would maintain nor any allegedly harmful event that will occur before this Court is able to rule on a full stay pending appeal. Third, the Board neither sought a stay in district court nor showed why doing so would have been impracticable, in violation of Rule 8.

## A. This case has already been remanded, so a stay would not accomplish anything.

Because administrative stays exist to prevent a district court's order from "go[ing] into effect," *Texas*, 144 S. Ct. at 798 (Barrett, J., concurring), they should not issue when an order has *gone* into effect, as is the case here. The district court's remand order is not some ongoing injunction—it was a singular act with an immediate effect that has already been completed and consummated, as the Board admits. Mot. at 4 ("[T]he district court has already returned this case to state court[.]"); *id*. at 21 ("[T]he district court also immediately entered an order effecting that remand.").

The Board's contrary argument rests primarily on two cases, but both counsel against a stay. First, the Board relies on *Cadence Education*, but as noted above, the Board fails to disclose the portion of *Cadence Education* recognizing that once the remand has already happened, "there [i]s nothing left

for this Court to stay." 15 F.4th at 73 n.2. Moreover, just three years later, in *United States v. Sastrom*, the First Circuit declined to extend *Cadence Education*'s remedy to a transfer case where "[t]he likelihood of this process providing any practical benefit to [the movant] is remote." 96 F.4th 33, 40 (1st Cir. 2024). The same is true here: Because there is no "formal procedural mechanism for the retrieval of a removed case erroneously returned to a state court," the most this Court could do following full plenary review on the merits is order the district court to "request the[] return" of the remanded cases. *Cadence Education*, 15 F.4th at 80 (internal quotation marks omitted). But the Board identifies no reason to believe the state courts would send the cases back. And there is every reason to believe they will not: They have already expended judicial and party resources exercising their jurisdiction, issuing orders, and directing the parties to prepare briefs in order to resolve questions of state law. In any event, that is not the office of an administrative stay.

Second, the Board cites *Republican National Committee v. North Carolina State Board of Elections*, No. 24-2044, but in that case, the district court "stayed remand until [a date certain] to allow for [an] appeal." Dkt. 21 at 5-6. Here, the district court did not impose a stay, but instead effectuated the remand due to the urgency of the pending preliminary injunction motion—leaving nothing to stay.

The Board cites no case in which a federal appellate court stayed a re-mand that had already happened. Judge Griffin is aware of no such case. The reason is obvious: no such relief is available.

### B. The Board does not identify the supposed harm an *administrative* stay would prevent before this Court can consider a full stay.

An administrative stay's "point is to minimize harm while an appellate court deliberates" on "the main event: a ruling on the motion for a stay pending appeal." *Texas*, 144 S. Ct. at 798-99 (Barrett, J., concurring). But the Board does not identify any "harm" that will occur in the next few days before this Court decides that "main event." *Id*.

**1.** As an initial matter, "at a minimum, administrative relief should (1) maintain the status quo and (2) be time limited." *Texas*, 144 S. Ct. at 802 (Sotomayor, J., dissenting). But the Board does not identify the status quo it is trying to "maintain." That is because when the Board filed its stay motion in this Court, the case had already been transferred to the North Carolina state courts, and those courts had already exercised that jurisdiction to issue orders. As things stand today, this case is being actively litigated in state courts. The Board's requested administrative stay thus purports to "upend[] the status quo." *Id*. at 802.

Nor can the Board explain what, if anything, will injure it *in the next week* absent an administrative stay. This Court has ordered Judge Griffin to file his opposition brief by January 14, 2025, and Judge Griffin will of course do

so. At that time, the full stay motion will be ripe for adjudication. Yet the Board identifies nothing that will transpire between now and mid-January to justify immediate administrative relief. An administrative stay should be denied on that basis.

**2.** None of the Board's concerns justify an administrative stay.

First, the Board claims that, "[w]ithout a stay," the district court's remand order "*could*" render its "appeal nugatory by prematurely returning the case to the state court." Mot. at 21 (emphasis added). But the case has already returned to the state court, as the Board acknowledges, *id.* at 22, and an administrative stay cannot change that. Even if this Court could "order a district court to retrieve an improperly remanded case," Mot. at 22, as the final disposition to this appeal, it cannot order that effectively injunctive relief now. Stays are used to prevent a lower court's ruling from "go[ing] into effect," *Texas*, 144 S. Ct. at 798 (Barrett, J., concurring), not to order a district court to undertake affirmative acts.

Second, the Board fears that "the state supreme court could reach final judgment before the Board's appeal of the remand order to this Court is resolved," Mot. at 22, but there is no real risk of final judgment before this Court can rule on the stay pending appeal. Briefing in the North Carolina Supreme Court will not be complete until January 24, *see* Mot. App'x at 92, but the Board's stay motion will be fully briefed in this Court by January 14.

Third, the Board complains that without a stay, "if this Court were to ultimately reverse, the district court and state court would need to sort out

11

what to make of the state-court proceedings that have transpired in the meantime." Mot. at 23. But an administrative stay cannot prevent state-court proceedings from occurring because they have already occurred. Because the North Carolina Supreme Court has already "entered rulings . . . in the interim period," *Northrup Grumman Tech. Servs., Inc. v. DynCorp Int'l LLC*, No. 1:16-cv-534, 2016 WL 3346349, at *4 (E.D. Va. June 16, 2016), granting an administrative stay would force the state and federal courts into the very "rat's nest of comity and federalism issues" that the Board says it wants to avoid, Mot. at 23 (citation omitted).

### C.  The Board failed to seek relief in district court and does not show that moving first in the district court would have been impracticable.

Finally, the Board failed to follow Rule 8's directive to first seek relief in district court, and that is an additional basis to deny relief. *See, e.g.*, *SEC v. Dunlap*, 253 F.3d 768, 774 (4th Cir. 2001) (explaining that movant's failure to move first in the district court for a stay or explain why doing so was impracticable "constitutes an omission we cannot properly ignore" and thus denying the motion); *see also Whole Woman's Health v. Paxton*, 972 F.3d 649, 654 (5th Cir. 2020) ("The State's failure to show the impracticability of moving first in the district court is sufficient grounds to deny its motion.").

In a single footnote, the Board asks the Court to overlook this defect by claiming that the district court's immediately effective remand order "den[ied] the Board the opportunity to seek a stay in district court." Mot. at

10 n.3. But that undercuts the very premise of the Board's stay motion: If the district court had no power to enter a stay post-remand, then neither does this Court. If the Board thinks otherwise, it does not explain why or cite a single case in support.

## II. The Traditional *Nken* Factors Counsel Against a Stay.

Even if an administrative stay were not procedurally improper, the Board has not carried its burden on any of the *Nken* factors.

### A. The Board is unlikely to succeed on the merits of its appeal.

The Board is unlikely to prevail on appeal because the district court did not abuse its discretion by abstaining in favor of the North Carolina Supreme Court in a case centered on state-law disputes "of statewide significance." D.E. 1-5 at 44. Moreover, this Court can affirm on an alternative ground: the district court lacked removal jurisdiction under section 1443(2).

#### 1. The district court properly abstained from resolving Judge Griffin's complex questions of state law.

For at least three reasons, the district court properly exercised its discretion to abstain under *Burford v. Sun Oil Co.*, 319 U.S. 315 (1943), and *Louisiana Power & Light Co. v. City of Thibodaux*, 360 U.S. 25 (1959).  *See Hennis*, 66 F.3d at 274.

First, the district court correctly found that this case involves difficult and "unsettled questions" of state election law that "lie at the heart of state sovereignty and [the] right to self-government." D.E. 50 at 23-24. The answers to those questions "could sway the outcome of a state election and

affect the right to vote" in "future *state* elections." *Id.* at 24 (emphasis in original). Judge Griffin's protests raise serious state-law questions that the North Carolina Supreme Court has not "conclusively" decided. *Wise v. Circosta*, 978 F.3d 93, 101 (4th Cir. 2020). And those provisions are part of a complex state-law framework governing state elections—a "matter committed primarily to the control of states." *Hutchison v. Miller*, 797 F.2d 1279, 1280 (4th Cir. 1986). That makes this a classic case for abstention, one presenting "difficult questions of state law bearing on policy problems of substantial public import whose importance transcends the result in the case then at bar." *Johnson v. Collins Enmt't Co.*, 199 F.3d 710, 719 (4th Cir. 1999) (internal quotation marks omitted).

Second, the district court held that deciding this case would force it to make "a dubious and tentative forecast" about unsettled state-law questions, risking the creation of a "patchwork of inconsistent interpretations." D.E. 50 at 24 (internal quotation marks omitted). Abstention is appropriate when a federal decision "would be disruptive of state efforts to establish a coherent policy with respect to a matter of substantial public concern." *Johnson*, 199 F.3d at 719 (internal quotation marks omitted). That applies doubly in this case, where the wrongful removal of this case to federal court prevented the North Carolina Supreme Court from giving an authoritative answer to those state-law questions. With the North Carolina Supreme Court "ready to act," abstention made sense. *Wise*, 978 F.3d at 103; *see also* Mot. App'x at 91-92.

Third, the district court concluded that the "primacy of state law issues" and the "relatively tenuous federal interest" in this case favored abstention. D.E. 50 at 24-25; *Johnson*, 199 F.3d at 723 ("[T]he predominance of state law issues affecting state public policy" should cause federal courts to exercise "caution"). Indeed, Judge Griffin's protests and petition arise under state laws, none of which "implicate federal elections." D.E. 50 at 25; *see generally* D.E. 1-4. And the federal statute supposedly justifying removal here applies only to federal elections, *see* 52 U.S.C. § 20507, so its connection to this case is "dubious." D.E. 50 at 25. The district court therefore correctly abstained.

Although the Board did not respond to Judge Griffin's abstention arguments below, its motion to stay raises several arguments for the first time. As an initial matter, this Court should "decline to address" the Board's new arguments because the Board "failed to raise the issue to the district court." *Wards Corner Beauty Academy v. Nat'l Accrediting Comm'n of Career Arts & Sciences*, 922 F.3d 568, 578 (4th Cir. 2019).

In any event, the Board's arguments fail. First, the Board contends that abstention does not apply in cases removed under section 1443, *see* Mot. at 13, but there is no such exception to the Supreme Court's abstention precedents, *see Neal v. Wilson*, 112 F.3d 351, 356 (8th Cir. 1997) ("[a]lternatively" affirming a decision to abstain in a case purportedly removed under section 1443); *Sones v. Simpson*, No. 4:10-cv-2475, 2010 WL 5490801, at *5 (M.D. Pa. Dec. 3, 2010), *report and recommendation adopted*, 2011 WL 13666 (M.D. Pa. Jan. 4, 2011) (abstaining under *Younger* is "[e]ntirely aside from . . . the scope of

15

28 U.S.C. § 1443"). There are multiple decisions abstaining in section 1443 removals.   The Board's sole authority is an old, out-of-circuit decision that devoted a single sentence of dicta to the topic even though the parties did "not address abstention" on appeal. *Greenberg v. Veteran*, 889 F.2d 418, 422 (2d Cir. 1989).

Next, the Board argues that abstention is categorically inappropriate in voting-rights cases, *see* Mot. at 14-15, but this Court recently chose to abstain in just such a case. *See Wise*, 978 F.3d at 100-03 (abstaining under *Pullman* in a case with vote-dilution claims and the Board as a party). Other courts likewise "have stated that 'traditional abstention principles apply to civil rights cases,' including election-law cases involving important and potentially dispos[i]tive state-law issues." *Tex. Democratic Party v. Abbott*, 961 F.3d 389, 397 n.13 (5th Cir. 2020) (citations omitted); *see also id.* at 418 (Costa, J., concurring) (rejecting argument "that *Pullman* does not apply to voting rights cases"). "[I]t is clear that there is no rule" providing "that there should not be abstention in civil rights cases." 17A Vikram David Amar, *Federal Practice and Procedure* § 4242 (3d ed.) (collecting cases).

The Board further contends that federal interests predominate because North Carolina has a unified registration system for federal and state elections and because some of the state statutes underlying Judge Griffin's claims "relate[]" to federal laws. Mot. at 17. But none of those federal laws apply to state elections, and none of the relevant state statutes incorporate federal law by reference. *See* D.E. 49 at 15-16.

Next, the Board contends that *Burford* abstention is inappropriate because this case does not present "difficult" questions of state law. Mot. at 18. But Judge Griffin's claims require resolution of complex questions, such as whether the photo identification requirements in Article 20 of the General Statutes apply to overseas absentee voters casting ballots under Article 21A. *See generally* D.E. 1-4. "None of the parties have suggested or argued that state courts have already settled this issue conclusively." Wise, 978 F.3d at 101. And interpretation of this complex system of *state* election laws necessarily implicates the need for uniform treatment of a "local problem." *New Orleans Pub. Serv., Inc. v. Council & City of New Orleans*, 491 U.S. 350, 362 (1989). Although the Board would have a federal court decide these state-law questions, that would run afoul of the "comity" concerns that underlie the abstention doctrines. D.E. 50 at 20-21; *Erie Ins. Exch. v. Maryland Ins. Admin.,* 105 F.4th 145, 149 (4th Cir. 2024); *see also Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 106 (1984); *Minnesota v. Nat'l Tea Co.*, 309 U.S. 551, 557 (1940).

Finally, the Board takes issue with the district court's invocation of *Thibodaux*. But the district court merely noted *Thibodaux*'s reasoning that federal courts should abstain in "cases raising issues intimately involved with the State's sovereign prerogative" supported its decision to abstain under *Burford*. D.E. 50 at 21, 24. That application of *Thibodaux* squares with this Court's explanation that "[o]verlapping rationales motivate these doctrines and considerations that support abstaining under one will often support

17

abstaining under another." *Martin v. Stewart*, 499 F.3d 360, 364 (4th Cir. 2007). Indeed, for that very reason, *Pullman* abstention further supports the district court's decision to remand and provides an alternative basis to affirm its decision. *See* D.E. 49 at 6-8.

*   *   *

The Board has not demonstrated any error in the district court's abstention analysis, but even if this Court thought it "might have ruled otherwise in the first instance," that is not enough to show an abuse of discretion. *Evans*, 304 F.3d at 348.

> **2. There is at least one alternative basis to affirm the decision below.**

Regardless of how this Court views the abstention issue, the district court's decision is likely to be affirmed on appeal for at least one independent and alternative reason: Removal under section 1443(2) was jurisdictionally improper. The Court "may affirm on any ground supported by the record" even if the district court did not adopt it. *United States v. Williams*, 56 F.4th 366, 371 n.4 (4th Cir. 2023).

By its terms, section 1443(2) applies only when a defendant is sued "for *refusing* to do an[] act," not when a defendant is sued for *acting* affirmatively or threatening to do so. 28 U.S.C. § 1443(2) (emphasis added). A "state court action" is not removable when it "is not brought against the . . . Defendants 'for refusing to do' anything." *Common Cause v. Lewis*, 358 F. Supp. 3d 505, 510 (E.D.N.C. 2019), *aff'd*, 956 F.3d 246 (4th Cir. 2020).

Judge Griffin's petition does not challenge any refusal to act. By requesting "a writ of prohibition to stop the State Board of Elections from counting unlawful ballots," it seeks to prevent the Board from taking unlawful action. D.E. 1-4 at 14. It does not seek "to punish [the Board] for refusing to do any act." *Detroit Police Lieutenants & Sergeants Ass'n v. City of Detroit*, 597 F.2d 566, 568 (6th Cir. 1979) (affirming remand to state court); *see also Mass. Council of Constr. Emps., Inc. v. White*, 495 F. Supp. 220, 222 (D. Mass. 1980) (holding section 1443(2)'s refusal clause did not permit removal because "the defendants' actions, rather than their inaction, are being challenged."); *McQueary v. Jefferson County*, 819 F.2d 1142, at *1-3 (6th Cir. 1987) (per curiam table decision) (state officials who were sued for firing employees could not invoke § 1443(2) because they were not being sued for "refusing to do any act inconsistent" with federal law); *Wolpoff v. Cuomo*, 792 F. Supp. 964, 968 (S.D.N.Y. 1992) (the refusal clause does not allow "legislators who are sued because of the way they cast their votes[] to remove their cases to federal courts").

## B. The Board faces no prospect of irreparable harm absent an administrative stay.

As explained above, *see supra* Part I.B, there is no justification for an administrative stay if the movant will not suffer any "harm while [the] appellate court deliberates" on the motion for a full stay pending appeal. *Texas*, 144 S. Ct. at 798 (Barrett, J., concurring). In this case, the Board has not identified a single harm it will suffer between now and the time this Court can rule on the full stay pending appeal, perhaps as soon as next week. *See supra*

19

Part I.B. Accordingly, the Board has failed to satisfy the second *Nken* prong at the administrative stay stage.

## C.  The remaining *Nken* factors counsel against a stay.

The Board seeks to inflict irreparable harm on Judge Griffin and harm the public interest.

As the Board conceded below, Judge Griffin faces obvious irreparable harm from the Board's effort certify the election based on unlawful votes. *See* Mot. App'x at 76 ("The Board does not dispute that certification will moot Petitioner's protests, and that this eventuality constitues irreparable harm."). Remanding the matter to the North Carolina Supreme Court has avoided this irreparable harm by allowing that Court to enter a temporary stay maintaining the status quo. Mot. App'x at 91-92. A stay of the remand order would not accomplish anything, *see supra* Part I, but to the extent the Board mistakenly believes an administrative stay would vacate the North Carolina Supreme Court's stay order, that would constitute irreparable harm for the reasons the Board admitted below.

Moreover, the public interest favors allowing North Carolina courts to quickly decide pressing questions of North Carolina law. As the North Carolina Supreme Court has already determined on remand, "this matter should be addressed expeditiously because it concerns certification of an election." Mot. App'x at 91.

## CONCLUSION

The motion for an administrative stay should be denied.

Respectfully submitted.

/s/ *Kyle D. Hawkins*

Mark M. Rothrock                    Kyle D. Hawkins
LEHOTSKY KELLER COHN LLP              *Counsel of Record*
8513 Caldbeck Drive                  William T. Thompson
Raleigh, NC 27615                    LEHOTSKY KELLER COHN LLP
(336) 416-3326                       408 W. 11st Street, 5th Floor
mark@lkcfirm.com                     Austin, TX 78701
                                     (512) 693-8350
                                     kyle@lkcfirm.com

                                     *Counsel for Petitioner-Appellee*

## CERTIFICATE OF SERVICE

I certify that on January 8, 2025 this brief was served via CM/ECF on all registered counsel and transmitted to the Clerk of the Court.

*/s/ Kyle D. Hawkins*
Kyle D. Hawkins

## CERTIFICATES OF COMPLIANCE

Undersigned counsel certifies that this motion complies with Fed. R. App. P. 27(d)(2)(C), 32(a)(5), 32(g)(1), and Local Rule 27.

Dated: January 8, 2025

*/s/ Kyle D. Hawkins*
Kyle D. Hawkins