No. 25-1018, 25-1019, 25-1024

In The

# United States Court Of Appeals
## For The Fourth Circuit

**JEFFERSON GRIFFIN,**

*Petitioner-Appellee*

**v.**

**NORTH CAROLINA STATE BOARD OF ELECTIONS.**

*Respondent-Appellant*

and

**ALLISON RIGGS, et al.,**

*Intervenor- Respondents.*

ON APPEAL FROM THE UNITED STATES
DISTRICT COURT FOR THE EASTERN
DISTRICT OF NORTH CAROLINA

---

**BRIEF OF KALAH NICOLE MARTIN AS AMICUS CURIAE**

---

*PROPOSED BRIEF IN SUPPORT OF THE PEOPLE; SUPPORT OF APPELLANT JUDGE JEFFERSON GRIFFIN; JURISDICTION SUPPORT OF APPELLEE IN JURISDICTIONAL ARGUMENT.*

**Taylor M. Dant**
P.O. BOX 436
9052 W Market St.,
Colfax, North Carolina  27235-9622
(P)(919) 726 - 4812
(E) td@dantlegal.com

# TABLE OF CONTENTS

| **SECTION** | | **PAGE NUMBER** |
|---|---|---|
| INTRODUCTION | …………………………… | 4 |
| AMACI MARTIN | ………………………… | 5 |
| CAUSE AND CIRCUMSTANCES FOR AMICUS | ………………………… | 7 |
| SUPPORT OF JUDGE GRIFFIN | ………………………… | 13 |
| TIMELINE OF RELEVANT ACTIVITY | ………………………… | 17 |
| JUDGE GRIFFIN AND JUDGE RIGGS | ………………………… | 20 |
| FEDERAL COURT IS PROPER JURISDICTION | ………………………… | 21 |
| THE HOOPTIE HAUNTS NORTH CAROLINA | ………………………… | 25 |
| CERTIFICATE OF COMPLIANCE | ………………………… | 29 |
| CERTIFICATE OF SERVICE | ………………………… | 30 |

# TABLE OF AUTHORITIES

## SECTION                                               PAGE

*Bush v. Gore*,
531 U.S. 90, 104-05 (2000).                 .....................     22


*Martin v. Seabolt et al*,
1:21-CV-00906-LPA (N.C.M.D. 2021).          .....................     4


*Martin v. Short, Gabby and Harrelson.*     .....................     4
23-1588 (4th Cir. 2024).


N.C. Gen. Stat. § 163                       .....................     15

28 U.S.C. §§ 1863(b)(3)                     .....................     15

North Carolina Voter                        .....................     17
Registration lookup

https://vt.ncsbe.gov/RegLkup/

Jury Plan of the North Carolina            .....................     18
Middle District

https://www.ncmd.uscourts.gov/sites/nc
md/files/juryplan.pdf


North Carolina County Specific Data        .....................     18
https://www.ncsbe.gov/results-
data/voter-registration-data.

## INTRODUCTION

Kalah Nicole Martin ("Martin") submits this proposed brief as a voice for the constitutional rights of all North Carolinians, unaligned with political puppeteering or institutional allegiances. Martin, a young Black Republican woman, has firsthand experience with the failures of North Carolina's legal and administrative systems. Her voice resonates deeply on the issues of accountability, constitutional rights, and the integrity of government institutions on any side one may resonate politically. Martin, a victim of systemic failures and corruption, has no ties to political parties, election nonprofits, or lobbying entities in this case.

Martin's position is unique and independent, representing the individual against the State of North Carolina's abuse of power. She stands before this Court as a symbol of the individuals who rely on government agencies to uphold justice and protect constitutional rights who continuously has been violated, beaten, silenced, and betrayed. As an individual and by and through counsel, Martin's deep and distressing understanding of North Carolina's unjust idea of a functioning legal system suffocates Martin; reaching as far as the reason it is Martin and

only her trusted counsel against monumental forces since 2021.[1] Her interest in this case is deeply rooted in the accountability of North Carolina's Board of Elections and its role in ensuring fair elections which directly impacts the justice system and its impartiality.

## II

### AMICI MARTIN
*Interest for the Law and the People*

Martin is the prevailing plaintiff-Appellee on the issue of immunity in *Martin v. Short, Gabby and Harrelson*, 23-1588 (4th Cir. 2024), and is awaiting a decision on motions for a new trial and reconsideration in her excessive force case against Randolph County deputies (*Martin v. Seabolt et al.*, 1:21-CV-00906-LPA); specifically, official capacity claims against Randolph County Sheriff and his Deputies. (Herein referred to as 'Excessive Force.'). Martin's case exemplifies systemic failures: she suffered life-altering harm from dozens of deputies in a county marred by lawsuits under the same sheriff of said county; Randolph County, North Carolina.

---

[1] Amicus Brief was not authored in whole or party for a party. No one, at all, made a monetary contribution, aside from undersigned, to the preparation or submission of any moving document or any brief.

Randolph County is the same county is mentioned specifically for this Court's attention allegedly double counting votes, or alleged mishaps in counting or machine D.E. 1-40 at 208-209, and at 210-355. Randolph Counties Sherriff has been represented by the same partners against undersigned in Martin's case since 2021; partners of the same firm representing Judge Riggs in this case, with a separate partner allegedly married to Judge Riggs, per filings.

Despite prevailing in the Fourth Circuit, Martin was abandoned by state agencies and further silenced after finally having her voice heard in a long-awaited jury trial in the Excessive Force case; a silencing that gives rise of Martin's interest in all issues in this above captioned case. Undersigned duty for Martin, the State of North Carolina, Judge Riggs, Judge Griffin, and even those filing briefs as Amici asserting the election was fair; is a duty to ask this Honorable Court permission to file this Amicus Brief, as well as request to be heard in Oral Argument.

**III**

CAUSE AND CIRCUMSTANCES FOR AMICUS BRIEF

Although the case up for the Courts attention is a Jurisdictional issue, all sides have done a phenomenal job at attempting to legally back door a spot on the North Carolina Supreme Court without investigating a mass illegality by or through official actors. Martin became aware of the issue mentioned herein in this above captioned case immediately after her unanimous jury verdict in favor of the Randolph County Deputies.

On November 20, 2024; in the Excessive Force case, after a three-day trial a Jury Verdict was rendered against Martin in favor of three individual deputies of Randolph County; Gabby, Short and Harrelson. The Middle District of North Carolina holds on or around twenty-four counties with Martin's Jury Trial held in the Federal Courthouse located in downtown Greensboro, North Carolina. The Middle District of North Carolina's voir dire would include registered voters of a population of around three million residents. In a Civil Rights §1983 case, voir dire includes six jurors; in this case; eight jurors and questions asked only by Magistrate Judge.

Martin suffers from PTSD due the beating she took from a dozen police officers. Why was she brutalized by Randolph County Deputies? Martin was driving a hooptie to her first day of work, with a physically-dirty but valid license plate seized earlier in the day, while driving under the speed limit in the rain, with her hazard lights on, in a construction zone. Losing five jobs since, losing two homes, and losing her life as she knew it and liberty, PTSD and permanent physical injury; Martin faced her abusers and the Sheriff who ignored her for the first time in five years as they refused to investigate her complaint, Sherriff Seabolt met with her and promoted all deputies involved in 2019, denied countlessly reports of video footage, and did nothing to protect Martin or the public.

Martin, who has gone through **enough** betrayal of the state of North Carolina, finally had her day in court. When the jury walks in and Martin is having tremors from PTSD, one of the first of eight in the box, of a population compromising around three million people. ('JurorA') with electronic public history of bias against Martin's family, swore under oath to having no knowledge of anyone: counselor or Martin. Of course, a fair a cross-referenced selection of community for jury selection includes voir dire to rid of ill fate; at any time,  federal or state, civil or criminal - -

there is a chance foe may be paneled as a potential peer. Voir dire allows the opportunity to strike for cause or further questions by the Court. However, in this trial, voir dire was conducted entirely by Magistrate Judge.

Martin asked counsel to see the list of names,[2] and demanded undersigned strike JurorA. Due to trial strategy, undersigned asked Martin countless times if Martin was sure to strike this juror for cause but if denied, use one of three preemptory strikes. Matin was sure.  In fact, that may have been the first time in undersigned and Martin's long professional relationship Martin became cross with counsel. Martin struck JurorA for cause because JurorA affirmatively presented to the court JurorA did not know Martin, there was a public and long record of evidence JurorA not only knew Martin, JurorA's family were charged as perpetrator of crimes against Martin by the State of North Carolina. Counsel did not object to striking JurorA for cause. Juror A was struck for cause, and then opposing counsel utilized one of three strikes. After

---

[2] Counsel obtained permission of Martin to include comments in this brief. Martin expressly preserves Attorney Client privileged communication aside from permitted comments necessary to include in brief and unavailable under alternative means.

JurorA and another Juror were struck, neither counsel utilized another strike, upon memory and belief.

Already betrayed by North Carolina for five years, beaten, suffering indescribable daily pain and loss; Martin now believed her long awaited jury trial was tainted. The cloud of corruption took her day in court away. But, at the time, undersigned consoled Martin. Essentially; we found it, we struck JurorA, the rest of the jury seems fair, this happens, everything is going to be fine. The trial started, every deputy was impeached, Sheriff Seabolt made jokes on the stand and the one-time Martin broke down was during his testimony. When asked about "fleeing to elude," charges that were dismissed, Seabolt, proclaimed he has a great relationship with the DA's, looking directly at a breaking down Martin, stared right at Martin instead of the jury, the first time she started crying and said to her, "they could always charge her again," five years later.

The jury deliberated for hours, through a lunch break, after three days and unanimously found the three deputies not liable; even for nominal damages, in an extremely clear case, where all testifying witnesses were impeached; medical records highlighted assault with

pamphlets of "what to do when you are assaulted' and medical proof of such; battery; and PTSD; Martin testified; the Sherriff did not make a positive impression by joking and laughing on the stand and, without any reason nor questioning, brought up the case as if it were a race case under oath for the *second time;* the first being in depositions about hiring a minority deputy; and, the second in trial being unsolicited about how he treats everyone the same, even "illegals;" alongside the proof of existence of body cameras; despite years of contradictory statements under oath by the county in the contrary; a curveball of a deputy testimony indicating the truth against Seabolt; and, the only story making sense being Martin; the Jury did not find any liability, even nominal damages.

Immediately after trial - - immediately after; Martin's counsel started post-trial appeal investigation. Justice Riggs has faith in her democracy and administrative Agencies. Undersigned has distain and contempt for the State of North Carolina's loose and subjective discretional application of the States idea of equal application of the law or even understanding that the rule of law applies. However, undersigned truthfully believed it could not go as far as a Federal Jury, undersigned protected Martin from that and consoled Martins worry in the begging of her day in court.

Except, numerous indicators immediately following trial demanded swiftness in figuring out if anything happened in this trial consistent with the atmosphere of a North Carolina county jury trial vs undersigned's idea of a Federal jury trial. Swiftly, undersigned investigated the technical details of the NCMD jury plan, and investigated the selection of jurors.

Numerous lawyers before undersigned abandoned Martin after communicating with opposing counsel, not because they are disrespectful; the attorneys in Martins case taught undersigned everything she knows, her only teacher, because she had to go against them without anything but understanding of law and one job, to beat them. They are great attorneys. The previous counsel abandoned Martin because excessive force and official capacity cases are hard, going against their law firm is harder. Randolph County Courts abandoned Martin. Randolph County investigative agencies abandoned Martin. Seabolt abandoned Martin. Undersigned never did, and for the first time when Martin mattered and her voice was heard prevailing in Oral argument in this court as appellee, she had faith again in her day in court and a fair honest conclusion to years of trauma, betrayal and illegality. Except,

when that long awaited day came, Martin's heart broke the second the first eight jurors sat in the box. Despite undersigned's consoling, Martin's dreams of her jury trial were shattered, because Martin was correct; the State of North Carolina stripped her even a fair jury trial or her peers.

**IV**

SUPPORT OF JUDGE GRIFFIN, APPELLEE-PETITIONER
*Election Tampering of North Carolina State Positions, Statewide.*

Importantly, there can be no claim of appeal due under due process violations with jury selection if a foe is struck for cause, despite the nature of the almost impossible statistic of JurorA as one of eight in the jury box. There is, however, great concern if JurorA could not, under any circumstances have been in the Jury Selection Pool. It is merely not a coincidence any longer, if JurorA, through public data, *legally could not have sat in the first seats of jury selection* in the Middle District of North Carolina.

Relevant portions of the North Carolina Middle District Jury Plan, signed and effective by all sitting North Carolina Middle District Judicial officials: Section V, pg. 7, 18 states as follows:

**"VOTER REGISTRATION LISTS AS SOURCE OF NAMES[:]**

**The <u>Clerk shall compile and maintain</u> a master list of randomly selected residents of the twenty-four counties comprising this district from which prospective jurors are to be chosen. The master list shall be a list of persons <u>who are registered to vote</u> in one of the counties within the district. The master list so compiled shall be <u>used for a period of two years.</u>**

**The Court finds that the persons whose names appear on the source lists in the twenty-four counties comprising this district (on and after January 1, 2021) <u>represent a fair cross section of the community.</u> The procedures prescribed in this Plan to be followed in selecting names from source lists are designed:**

**[a] to ensure the random selection of a fair cross section of the persons <u>residing in the community of this district</u>; and**

**[b] to ensure that each county in the district is substantially proportionately represented in the Master Jury Wheel.**

A. **Random Selection from Source Lists. The selection of names from the voter registration lists shall be made electronically by using a purely randomized process through a properly programmed electronic data processing system. Similarly, a properly programmed electronic data processing system for pure randomized selection shall be used to select**

names from the master wheel for the purpose of determining qualification for jury service, and from the Qualified Wheel for summoning persons to serve as grand or petit jurors. Such random selections of names from the source lists for inclusion in the Master Wheel shall ensure that each county within the jury selection division is substantially proportionally represented in the Master Jury Wheel in accordance with 28 U.S.C. §§ 1863(b)(3). The selection of names from the source lists, the Master Wheel, and the Qualified Wheel must also ensure that each name on the list from which random selection is being made has a substantially equal chance of being selected.

The term "voter registration list(s)" as used herein shall mean the official records of persons registered to vote in the most recent national general election, established and maintained by county boards of elections in compliance with 6 Chapter 163 of the General Statutes of North Carolina and any rules and regulations promulgated pursuant thereto by the North Carolina State Board of Elections.

B. The selection of names shall be made by the Clerk, or made under the Clerk's direction or supervision. The Clerk is authorized to use personnel of county boards of elections or an outside vendor/contractor to use computer programs to make the name selections in compliance with the Act and this Plan."

NCMD, Jury Plan, Signed March 2022, Filed April 13, 2022.

The Middle District of North Carolina specifies procedure for after trial, "[a]fter a trial is complete and the service of the jurors who served at that trial is terminated, the Clerk may, upon receipt of a written request, provide the names, addresses and telephone numbers to representatives of the media or to counsel for any party to the case." *See id.* pg. 13. Counsel filed to the Clerk of Court and was instructed by the Clerk to file a Motion requesting. The North Carolina Middle District Magistrate Judge Denied undersigned request for Juror information, for failing to provide a brief. *Martin v. Seabolt, et al* 1:21-cv-00906 (N.C.M.D., Text Order: 11 November, 2024).

Upon request of counsel and Court, undersigned will provide proof of the following in the manner requested by Court or counsel.[3]

---

[3] Due to the ongoing Excessive Force case and other legal ramification, it is the opinion of undersigned to redact or seal Juror' A's identity. For the Court; or if the court would like to view the evidence, upon instruction on redactions, if any, counsel is willing and able to provide in any manner requested.

16

**V**

TIMELINE OF ELECTION ACTIVITY

I.  **November 5, 2024**, On November 5, 2025, the North Carolina voters chose Justice Riggs over her opponent, Plaintiff Jefferson Griffin, in the general election for Seat 6 of the North Carolina Supreme Court.[D.E. 1-13, at 2].

II.  **November 18, 2024**, Martin's Excessive Force Trial begins.

III.  **November 19, 2024**, Petitioner [Judge Griffin] filed hundreds of election protests throughout the State challenging the election results after Judge Riggs wins, and after counting the votes.

I.  **November 20, 2024**; Excessive Force Jury trial ends.

II.  **November 21, 2024**: Undersigned begins investigating; public Voter ID from the North Carolina State Board of Elections states JurorA voted early in the election on November 5, 2024.

III.  **November 21, 2024**: JurorA's voter status is listed as INACTIVE through (https://vt.ncsbe.gov/RegLkup/); public record and official North Carolina State Board of Elections Voter Registration.

IV.  **November 21, 2024**: JurorA's voter registration address is registered in High Point, public record and official North Carolina State Board of Elections Voter Registration through the County of Guilford, page 41 of 101 entries; screenshot and proof available if requested.

V.  **November 21, 2024**: JurorA's voter registration address is listed as:

"[. . .]" "GUILFORD" "[. . .]" "NCID" "[JURORA] [ADDRESS IN NOVEMBER] "I" "INACTIVE" "IU" CONFIRMATION, RETURNED UNDELIVERABLE" "[ADDRESS AGAIN]" "[. . .]" "[B]" "DEM" "[GENDER]" "[BIRTH YEAR]" "[AGE]" "NC" [. . .]" (https://www.ncsbe.gov/results-data/voter-registration-data).

VI.    **December 11, 2024:** The State Board held a public meeting to consider Judge Griffin's protests. D.E. 1-5 at

VII.    **December 13, 2024**, the Board dismissed the protests for improper service and legal deficiency. D.E. 1-5, at 37.

VIII.    **December 13, 2024**, the State Board of Elections issued a Decision and Order dismissing the protests at issue here. *Id.*

IX.    **December 18, 2024**, Judge Griffin filed a Petition for Writ of Prohibition directly with the N.C. Supreme Court. Doc 13, pg. 4, 8.

X.    **December 19, 2024**, the State Board removed Judge Griffin's action to the Eastern District of North Carolina. Doc 13, pg. 4, 8.

XI.    **January 3, 2025**, Judge Griffin files a remand to the North Carolina State Supreme Court. D.E. at 10.

XII.    **January 6, 2025**, the district court "abstain[ed] from deciding Griffin's motion All defendants appealed. Doc 1-13, at 12.

XIII.    **January 7, 2025**, the Board of Elections moved in this Court for a stay pending appeal. D.E. 1-13, at 12.

XIV.    **January 22, 2024**: JurorA's voter status is listed as ACTIVE through (https://vt.ncsbe.gov/RegLkup/); public record and official North Carolina State Board of Elections Voter Registration.

XV.    **January 22, 2024**, the registered address has changed to an address in Greensboro, page 41 of 101 entries (https://www.ncsbe.gov/results-data/voter-registration-data). Now listed as:

"[. . .]" "GUILFORD" "[. . .]" "[SAME NCID]" "[JURORA]
[ADDRESS CHANGE] "A" "ACTIVE" "AV" "VERIFIED"
"[ADDRESS AGAIN]" "[. . .]" "[B]" "DEM" "[GENDER]" "[BIRTH
YEAR]" "[AGE]" "NC" [. . .]"

XVI. **January 22, 2024**, the same voting record is present, now
associated with an ACTIVE status.

These voter roll discrepancies of JurorA directly undermine claims by
the North Carolina Board of Elections and other parties that the election
was fair and untainted. When voter data is mishandled to this extent, it
raises substantial doubts about the validity of the election and the
administrative agencies tasked with safeguarding it. The change in voter
status raises questions about the accuracy and transparency of voter roll
maintenance. If a voter was inactive due to an undeliverable address and
subsequently became active without an updated address, it suggests
potential mismanagement or tampering supporting all of Judge Griffin's
contentions of illegal voting counts for all counties in the middle district
included in his petition; and against all claims of Appellant assertion of
valid voters and disenfranchisement.

Other than a flagrant illegal action; especially given the nature of this
case and subsequent State and Federal Court Orders, the address
discrepancy over a two-month period raises concerns about voter integrity.

If the Board of Elections corrected the address but did not clarify how, it undermines confidence in their ability to manage voter data accurately. The voter history consistency does not explain how an inactive voter participated in early voting, further suggesting lapses in verifying voter eligibility before changing statuses. Such inconsistencies call into question the integrity of voter rolls and, by extension, the election process

## VI

### JUDGE RIGGS AND JUDGE GRIFFIN
*Victims of Administrative Illegality and Failure.*

To be clear, writing this Brief is heavy. Both Judge Griffin and Judge Riggs represent the qualifications of fighting for North Carolina that deserve a seat of on the Bench. If undersigned ever had any desire to be a judge, which she does not, and undersigned was currently sitting on the North Carolina Supreme Court; she would take the chance to retire regardless of the party replacing her; these two individuals did not deserve to be a victim of the State as well, tainting their accomplishments in the chronic failure of North Carolina Administrative Agencies. Judge Griffin's protests reflect a lack of trust in North Carolina's election system, which Martin's experiences validate.

Judge Riggs, on the other hand, benefits from institutional support and faith in agencies such as the North Carolina Board of Elections. This dichotomy highlights the challenges faced by individuals who challenge the status quo. While both judges represent critical issues, Griffin fighting for accountability in election processes and Riggs advocating for voting rights and public trust, the broader question is whether the system itself is equipped to uphold these ideals.

## VII

## FEDERAL COURT IS THE PROPER JURISDICTION

As represented by the North Carolina Board of Elections and its Democratic supporters, they argue that federal jurisdiction is appropriate because of the implications of federal civil rights laws and federal voter registration statutes, including the National Voter Registration Act (NVRA) and the Help America Vote Act (HAVA). While Judge Griffin's valid assertion under the Tenth Amendment, that his petition belongs in the state court for the seat he seeks is compelling, the Board's removal of this case to federal court exposes its own failure to adhere to state and federal law, particularly in the handling of voter registrations and elections.

In its filings, the Board demonstrates Equal Protection Concerns, "[s]ustaining Petitioner's protests would also violate the Equal Protection Clause… [and] value one person's vote over that of another" D.E. 1-5 at 53, *citing Bush v. Gore*, 531 U.S. 90, 104-05 (2000). However, the Board's own actions, such as inconsistencies in voter registration statuses and unexplained changes to voter data, demonstrate arbitrary and disparate treatment of voters. These very actions devalue the votes of law-abiding citizens by failing to uphold transparent and consistent processes.

The Board also harps on how federal law, thank goodness. Specifically NVRA's quiet period demands jurisdiction in Federal Court. "The NVRA forecloses Petitioner's relief [. . .] Requiring the Board to act now would completely undermine the quiet period's purpose" D.E. 1- 5 at 46. Yet, post-election, voter statuses and records were altered, *while they were removing this case to federal court and asking for injunctions* contradicting its own reliance on the NVRA to justify jurisdiction. The quiet period argument does not excuse the discrepancies in records for voters such as JurorA, whose status changed from inactive to active with no explanation between November 21, 2024, and January 22, 2025. Thus,

the Board is correct, this case should be in Federal Court because the Board violated federal law.

Additionally, there is a harping on the Right to Vote and Registration Integrity. If the rot of North Carolina abuse of power were not as dangerous and longstanding as it is, their assertion would not only be ironic it would be a laughing matter. "The right to vote encompasses the right to register. Once a person is registered to vote, they may be removed from the rolls only in narrow, enumerated circumstances…" *see* Doc. 5, 43. This assertion is contradicted by the Board's own documented discrepancies, such as JurorA's address change, status reclassification, and questionable registration activity. These actions directly undermine the integrity of voter rolls and the elections they oversee, thus the Board is correct, this case belongs in Federal Court.

By arguing that federal jurisdiction is appropriate under the NVRA and other federal statutes, the Board inadvertently underscores its own failures: (a) the Board's inability to explain the inconsistencies in JurorA's voter registration timeline undermines its credibility and raises serious questions about the validity of the election process it oversees (b) the reliance on federal statutes to defend their actions inadvertently

23

highlights their failure to comply with those same statutes, further supporting Judge Griffin's protests and the need for federal oversight.

The Board of Elections, by its own arguments, has demonstrated the very administrative failures that Judge Griffin seeks to expose. Their reliance on federal jurisdiction has not only proven Judge Griffin's point but also revealed the deeper systemic issues within North Carolina's election administration. If the Board is to demand adherence to federal law, it must first hold itself accountable to those same standards.

The discrepancies in voter registration records and their handling of this election suggest that the Board's own actions are the clearest evidence of election tampering and systemic failure. This Court has the opportunity to hold them accountable and, in doing so, restore faith in the integrity of North Carolina's electoral process. In their own words the Board focuses on minorities and the importance of protecting those rights. Well, a black woman was brutalized by excessive force, continuously ignored by state agencies for five years finally had her day in a jury trial where she was stripped of a jury of her peers because JurorA, was inactive and under no circumstances could have legally sat on the jury. Then, JurorA's voting status and registration were

impermissibly changed during the pendency of appeal. JurorA, is also a black woman.

## VIII

## THE HOOPTIE HAUNTS NORTH CAROLINA

Until North Carolina prioritizes people over politics and personal interests, its hardworking, financially burdened, and marginalized citizens will continue to suffer under the weight of systemic corruption. The failures of administrative agencies, courts, and elected officials ripple outward, creating a catastrophic cycle of injustice, abuse of power, and destruction. The State Board of Elections embodies this failure, serving as a linchpin in a system that prioritizes political agendas over accountability. If this Court holds the Board of Elections accountable, it could serve as a catalyst to dismantle broader corruption across North Carolina. This case is not just about election integrity; it is about the integrity of every institution that depends on fair elections, from the courts to law enforcement to the very administrative agencies charged with protecting the public.

Across North Carolina, the consequences of this unchecked corruption are catastrophic. Counties funnel public funds meant to

alleviate suffering into contracts with corporations and organizations operating outside the law. Innocent people are subjected to devastating abuses: from baseless felony charges to brutal treatment at the hands of law enforcement. In the mountains, communities face unimaginable suffering: homelessness, loss of life, and freezing conditions while grants meant to provide relief are misappropriated to benefit corrupt officials and their allies.

The system in North Carolina is designed to silence those who fight back. Attorneys who defend constitutional rights are defamed, stripped of their licenses, and subjected to targeted attacks through administrative agencies represented in this suit in the unwarranted, disrespectful and false insinuations against a presiding North Carolina Appellate Judge for simply inquiring into the votes in this election; and Judge Griffins petition will *likely succeed*. County officials collude with elected judges and sheriffs to perpetuate a culture of fear, ensuring that victims and their advocates are crushed under the weight of procedural abuse, character assassination, and systemic delay.

This case highlights the deep-rooted failures of North Carolina's institutions. The very individuals responsible for upholding the law

weaponize it against the people they are sworn to protect. There is no fairness, no impartiality, and no justice when administrative agencies, like the Board of Elections, manipulate processes for political gain and personal advantage. The names and actions implicated in this case represent a pervasive rot that reaches every corner of North Carolina's governance. Yet, if this Court demands accountability from the Board of Elections, it may ignite a necessary reckoning. By forcing the Board to follow the law, this Court could begin to dismantle the systemic failures that have harmed so many.

Martin's "Hooptie" haunts North Carolina, symbolizing the resilience of those who refuse to be silenced by corruption, injustice, and abuse of power. This case is not a jurisdictional argument, Martin's position is of course this case should be in the Federal Courts and Martin thanks the Democratic Party for bringing it here in their attempt to keep Judge Griffin from a G.O.P dominated state court so that they can continue doctoring official voter records and conceal valid, lawful, judicial petitions and inquiries, under a pretend "social warrior," exhausting democratic narrative; harming not only minorities, quite literally every citizen in the State of North Carolina. Judge Griffin is also correct; this

election was not legal. In fact, there are multiple violations of State and Federal law proven with the timeline and the Boards own words in all pages of these filings. Let this case be the turning point, where the Court restores faith in democracy and justice by holding the State Board of Elections accountable for its failures. To this Honorable Court, Martin prays this brief is permitted. Without a fair jury of peers, fair election of county officials, fair election of judges, nobody in North Carolina stands a chance.

## CERTIFICATES OF COMPLIANCE

Undersigned counsel certifies that this AMICUS BRIEF complies with Fed. R. App. P. 27(d)(2)(C), 32(a)(5), 32(g)(1), does not comply with the seven day statutory timeline but asks for permission in discretion due to extraordinary circumstances and Local Rule 27 and complies with Federal Rules of Appellate Procedure Rule 29.

Respectfully submitted this the 23 day of January, 2025.

/s/ *Taylor M. Dant*
Taylor M. Dant, esq.
P.O. BOX 436
9052 W Market St.,
Colfax, North Carolina
27235-9622
(P)(919) 726 – 4812
(F)(336) 397 – 9413
(E) td@dantlegal.com

## CERTIFICATE OF SERVICE

I certify that the foregoing was filed electronically with the Clerk of Court using the CM/ECF system, which will automatically serve electronic copies on all counsel of record.

This the 23 day of January, 2025.

/s/ *Taylor M. Dant*
Taylor M. Dant, esq.


*Counsel for Movant Amici,*
Ka'Lah Nicole Martin.